<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

KENNETH WILSON,                    :
                                   :   Civil Action No. 11-1201 (SDW)
            Petitioner,            :
                                   :
            v.                     :   **OPINION**
                                   :
CINDY SWEENEY, et al.,             :
                                   :
            Respondents.           :

**APPEARANCES:**

> KENNETH WILSON, Petitioner *pro se*
> # 74578/130668B
> East Jersey State Prison
> Lock Bag R
> Rahway, New Jersey 07065
>
> BARBARA A. ROSENKRANS, ESQ.
> ESSEX COUNTY PROSECUTOR'S OFFICE
> Essex County Courts Building
> 50 West Market Street
> Newark, New Jersey 07102
> Counsel for Respondents

**WIGENTON**, District Judge

Petitioner Kenneth Wilson ("Petitioner" or "Wilson"), a convicted state prisoner presently confined at the East Jersey State Prison in Rahway, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about September 30, 1993.  For the reasons stated herein, the Petition is dismissed as time-barred.  Because the

Court finds this action is time-barred, Petitioner's application
for an evidentiary hearing (ECF No. 42) and his motion for leave
to file to file a reply to Respondents' opposition letter brief[1]
(ECF No. 50) are rendered moot and are denied accordingly.

## I.   BACKGROUND

### A.   Procedural History

In October 1992, an Essex County Grand Jury indicted
Petitioner and co-defendants, Clara Sloan, Samuel Dugger and
Eugene Jenkins with the following offenses:   (Count One) second
degree conspiracy to murder Matthew McDaniel, in violation of
N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3a; (Count Two) first degree
robbery, in violation of N.J.S.A. 2C:15-1; (Count Three) felony
murder, in violation of N.J.S.A. 2C:11-3a(3); (Count Four)
knowing or purposeful murder, in violation of N.J.S.A. 2C:11-
3(a)(1) or (2); (Count Five) fourth degree unlawful possession
of a weapon, in violation of N.J.S.A. 2C:39-5d; and (Count Six)
third degree possession of a weapon for an unlawful purpose, in

---

[1] In his motion (ECF No. 50), Petitioner seeks leave to file his
reply to the Respondents' opposition to Petitioner's motion for
an evidentiary hearing and for tolling of the statute of
limitations period.  Petitioner attaches his reply with his
motion, and this Court has reviewed and considered same in
reaching a decision in this matter.

violation of N.J.S.A. 2C:39-4d.  (Ra1,[2] Essex County Indictment
No. 3652-10-92.)

Before trial, Counts One through Three, the charges of
conspiracy to commit murder, robbery and felony murder, were
dismissed as against Petitioner and co-defendants Jenkins and
Sloan.  (Ra22, Mar. 12, 1993 Transcript at 6:11-8:24.)  On April
3, 1993, Dugger pled guilty to the charge of conspiracy to
commit murder pursuant to a plea agreement recommending a prison
sentence not to exceed ten years in exchange for Dugger's
testimony against Petitioner and co-defendants at trial.
(Ra23.)  In July and August 1993, Petitioner, Jenkins and Sloan
were jointly tried before a jury and the Honorable Peter B.
Cooper, J.S.C.  (Ra24-Ra31.)  Petitioner and co-defendants
ultimately were convicted on the remaining counts of murder and
weapons offenses (Counts Four, Five and Six).  (Ra31, Aug. 5,
1993 Transcript at 28:5-20.)

On September 30, 1993, after denying Petitioner's motion
for a new trial (Ra32, Sep. 30, 1993 Motion Transcript at 12:21-
23), Judge Cooper merged Count Six into Count Four and sentenced
Petitioner to life imprisonment with a 30-year parole
disqualifier.  On Count Five, Judge Cooper sentenced Petitioner

---

[2] "Ra" refers to the Respondents' appendix of exhibits that
comprise the relevant state court record in this matter.  The
exhibits are identified in an Index provided by the State and
docketed at ECF No. 18-2.

to a concurrent term of 18 months in prison.  (Ra2, Judgment of
Conviction; Ra33, Sep. 30, 1993 Sentencing Transcript at 11:23-
12:7.)

Petitioner thereafter filed a direct appeal from his
conviction and sentence before the Superior Court of New Jersey,
Appellate Division.  (Ra3.)  On May 25, 1995, the Appellate
Division affirmed Petitioner's conviction and modified the
sentence on the judgment of conviction "to reflect a VCCB
penalty of $30 on the conviction for murder."  (Ra5, May 25,
1995 App. Div. Op. at 9.)  The Supreme Court of New Jersey
denied certification on September 8, 1995.  (Ra7.)  Petitioner
did not seek a writ of certiorari before the Supreme Court of
New Jersey.

On May 21, 1997, Petitioner filed his first application for
post-conviction relief ("PCR") in the Superior Court of New
Jersey, Law Division, Essex County.  (Ra8.)  A PCR hearing was
conducted before the Honorable Edward R. Schwartz, J.S.C., on
October 18, 2000, (Ra34), and on that same date, Judge Schwartz
issued an Order denying the PCR application.  (Ra9.)  Petitioner
appealed from denial of his PCR petition.  On May 30, 2002, the
Appellate Division affirmed Judge Schwartz's denial of post-
conviction relief.  (Ra11.)  The Supreme Court of New Jersey
denied certification on October 22, 2002.  (Ra12.)

4

On May 7, 2003, Petitioner filed a motion for a new trial based on newly discovered evidence regarding co-defendant Dugger's plea agreement and anti-psychotic medication at the time of his trial testimony against Petitioner. (Ra13.)  On January 18, 2008, the Honorable Jerome M. St. John, J.S.C. issued an Order denying Petitioner's motion for a new trial. (Ra14.)  On March 15, 2008, Judge St. John filed a 10-page opinion explaining his denial of Petitioner's motion.  (Ra15.) Petitioner thereafter filed an appeal from the denial of his motion.  The Appellate Division affirmed the trial court's decision in an Opinion issued on August 19, 2010.  (Ra19.)  The New Jersey Supreme Court denied certification on January 20, 2011.  (Ra21.)

On February 24, 2011, Petitioner filed this federal habeas petition under 28 U.S.C. § 2254.  The petition was received and docketed March 2, 2011.  (ECF No. 1.)  On March 15, 2012, the State filed an answer to the petition with a copy of the relevant state court record.  (ECF Nos. 18, 19, 20, 21, 22.)

On January 24, 2013, this Court issued an Opinion and Order directing Petitioner to show cause in writing why his petition should not be dismissed as untimely, pursuant to 28 U.S.C. § 2244(d).  (ECF No. 36.)  Petitioner filed his response on May 28, 2013, together with a request for an evidentiary hearing.

(ECF Nos. 41 and 42.)  On June 10, 2013, this Court directed the
State to file a response/opposition to Petitioner's May 28, 2013
submission.  (ECF No. 45.)  The State filed a letter brief in
opposition on June 17, 2013.  (ECF Nos. 46, 47.)  On July 3,
2013, Petitioner filed a motion for leave to file a reply to the
State's opposition.  (ECF No. 50.)  Petitioner attached his
certification and brief in reply with his motion.  (ECF Nos. 50-
1, 50-2.)

B.  Factual Background

     The facts of this case, as recounted by the state court on
direct review, are afforded appropriate deference under 28
U.S.C. § 2254(e)(1).  Accordingly, this Court will simply recite
the abbreviated factual findings, as set forth in the
unpublished opinion of the Superior Court of New Jersey,
Appellate Division, decided on May 25, 1995, with respect to
Petitioner's direct appeal, as follows:

> The State's chief witness, Samuel Dugger, testified that
> the day of the murder, he, Jenkins, Wilson, and Sloan were
> smoking cocaine in his cousin's apartment.  While returning
> from the bathroom, Dugger heard Jenkins tell Wilson
> "[l]et's kill a homo."  Although Sloan remained silent,
> Wilson immediately agreed to participate in the plot.
> Dugger was initially concerned because he was a homosexual,
> but his fear dissipated because he believed only Sloan knew
> he was gay.  At Dugger's suggestion, they all departed for
> Matthew McDaniel's' house a short distance away.  Dugger
> knew McDaniels was a homosexual and in fact was going to
> McDaniels' apartment in the hope of engaging in sexual
> activities with him.  However, Dugger allegedly was not

concerned that Jenkins and Wilson would harm McDaniels
because they did not know he was gay.

McDaniels invited the three into his house where they drank
wine.  The group then pooled their money and purchased more
cocaine.  At some point, Dugger and McDaniels went into the
bedroom and began to engage in sexual activities.  Jenkins
and Wilson interrupted them and ordered Dugger to leave the
bedroom.  Dugger complied and sat with Sloan at the kitchen
table.  Dugger left the apartment when he heard McDaniels
screaming for help.

Several days later, the police responded to a neighbor's
complaint of foul odors emanating from McDaniels' house.
The police discovered McDaniels' body bound with telephone
wire at the wrist, neck, and ankles and gagged at the mouth
with a towel.  The cause of death was ligature
strangulation.

(Ra5, May 25, 1995 App. Div. Op. at 3-4.)

## II.  <u>STATEMENT OF CLAIMS</u>

Petitioner asserts the following claims in his petition for

habeas relief:

**<u>Ground One</u>:** The State's failure to disclose exculpatory

evidence to the defense before and during trial regarding the

prosecution's key witness deprived Petitioner his rights under

the Sixth and Fourteenth Amendments.  Specifically, petitioner

argues that the State failed to disclose information concerning

witness Dugger's use of psychotropic medications at the time of

his plea and testimony at trial, as well as Dugger's subsequent

release from prison shortly after testifying for the State at

Petitioner's trial.  (ECF No. 1, Petition at ¶ 12.)

7

**Ground Two:**  Petitioner was denied effective assistance of trial and appellate counsel in violation of his Sixth Amendment rights.  In particular, Petitioner contends that trial counsel failed to properly investigate the extent of Dugger's plea agreement with the State and the extent of Dugger's psychiatric history, including Dugger's taking of psychotropic medications before and during Petitioner's trial.  Petitioner also argues that appellate counsel "failed to properly investigate the prosecutorial misconduct that had occurred with regard to the failure of the prosecution to comply with the rules of discovery in light of the nature of Samuel Dugger's plea agreement and subsequent release from custody."  (*Id.*)

The State contends that the habeas claims lack substantive merit.  The State also asserts the affirmative defense that this habeas petition is untimely and should be dismissed accordingly. (ECF No. 18.)

In an Opinion entered on January 24, 2013, this Court found that the habeas petition was filed beyond the one-year statutory limitations period under 28 U.S.C. § 2244(d)(1)(A), which had expired on April 24, 1997.  This Court further ruled that the matter would be dismissed as untimely unless Petitioner could allege facts to support equitable tolling of the limitations period.  (ECF No. 36 at 10.)

III.  <u>DISCUSSION</u>

The limitations period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[3] and states:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The first step in resolving the timeliness of this habeas petition requires a determination of when petitioner's state

---

[3] The limitations period is applied on a claim-by-claim basis. *See Fielder v. Verner*, 379 F.3d 113 (3d Cir. 2004); *Sweger v. Chesney*, 294 F.3d 506 (3d Cir. 2002).

court judgment became final.  The judgment is determined to be final by the conclusion of direct review, or the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court.  *See Gonzalez v. Thaler*, ---U.S. ----, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012).

In this case, direct review concluded before the effective date of AEDPA on April 24, 1996.  Thus, Petitioner should have filed this habeas petition by April 24, 1997 for it to be deemed timely under 28 U.S.C. § 2244(d), unless the limitations period was statutorily and/or equitably tolled.  *See Miller v. Dragovich*, 311 F.3d 574, 576 (3d Cir. 2002) (noting that there would be a one-year grace period following the enactment of AEDPA in those cases in which a prisoner's conviction had become final before April 24, 1996).

The statute of limitations may be statutorily tolled during the time in which a properly filed state post-conviction relief petition is pending.  *See* 28 U.S.C. § 2244(d)(2).  The Third Circuit has explained that:

> A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (emphasis omitted), including "time limits, no matter their form," *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

> Thus, if a state court determines that an application is untimely, "'that [is] the end of the matter' for purposes of statutory tolling of AEDPA's limitation period, *id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)), "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits[,]" *Carey*, 536 U.S. at 226. But if a state court fails to rule clearly on the timeliness of an application, a federal court "must ... determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006).[4]

*Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85-86 (3d Cir. 2013).  Furthermore, the 90-day time period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one-year statute of limitations under 28 U.S.C. § 2244(d)(2).  *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

In this case, Petitioner filed his first PCR petition on May 21, 1997, after the one-year limitations period had expired on April 24, 1997.  Consequently, that first PCR petition could not serve to statutorily toll the limitations period because the limitations period already had expired when the PCR petition was filed.  *See Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004).

---

[4] In *Evans*, the Supreme Court also held that the time between denial of post-conviction relief and the filing of an appeal from that decision was not tolled where the appeal was untimely, even where the state court considered the untimely appeal on the merits.  *Evans*, 546 U.S. at 191.

However, in *Holland v. Florida*, the Supreme Court held that AEDPA's one-year limitations period is subject to equitable tolling in appropriate cases.  560 U.S. 631, 645 (2010); *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013).  A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Jenkins*, 705 F.3d at 89.

The diligence required for equitable tolling is reasonable diligence, not maximum, extreme, or exceptional diligence. *Holland*, 560 U.S. at 653.  "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well."  *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (citing *Jones*, 195 F.3d at 160). Reasonable diligence is examined under a subjective test, and it must be considered in light of the particular circumstances of the case.  *See Ross*, 712 F.3d at 799; *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.") (emphasis added) (internal quotation marks and citation omitted).

12

The court also must determine whether extraordinary circumstances exist to warrant equitable tolling. "[G]arden variety claim[s] of excusable neglect" by a petitioner's attorney do not generally present an extraordinary circumstance meriting equitable tolling. *Holland*, 560 U.S. at 651-52 (citations omitted); *see also Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003). Rather, equitable tolling could be triggered only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." *LaCava*, 398 F.3d at 275-276; *see also Holland*, 130 S.Ct. at 25 62 (relying on *Pace*, 544 U.S. at 418).

Indeed, extraordinary circumstances have been found only where: (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, *see Jones*, 195 F.3d at 159, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim. *See Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

13

Nevertheless, it must be restated that, even where extraordinary circumstances do exist, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

There are no bright lines in determining whether equitable tolling is warranted. *See Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). In determining whether equitable tolling is appropriate, "the particular circumstances of each petitioner must be taken into account," *see id.*, and each decision made on a case-by-case basis. *See Holland*, 560 U.S. at 649. The Third Circuit has explained, consistent with Supreme Court holdings in *Holland*, 560 U.S. at 648-49 and *Pace*, 544 U.S. at 418, that "equitable tolling is appropriate when principles of equity would make rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine." *Ross*, 712 F.3d at 799 (citing *Pabon*, 654 F.3d at 399); *see also Jenkins*, 705 F.3d at 89; *Urcinoli v. Cathal*, 546 F.3d 269, 278 (3d Cir. 2008).

14

In this case, Petitioner first argues that he is entitled to either equitable tolling or statutory tolling of the limitations period under 28 U.S.C. § 2244(d)(1)(B), because the inadequacy of the prison law library in 1997 constituted a state-created impediment to his timely filing of his habeas petition.  Specifically, Petitioner claims that he only became aware of the newly enacted AEDPA on May 2, 1997, more than a year after its enactment, because it was not available in the prison law library before that date.  Once aware, Petitioner filed his state PCR 19 days later, on May 21, 1997, to trigger tolling under 28 U.S.C. § 2244(d)(2).  Petitioner explains that before AEDPA, he believed he had five years from the date of entry of his state judgment of conviction to file his state PCR, pursuant to N.J.Ct.R. 3:22-12, or until September 30, 1998. Thus, his federal habeas petition should be regarded as timely because the filing of his first state PCR petition properly served to toll the limitations period.

Petitioner relies on *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) in support of this argument for tolling.  In *Whalem/Hunt*, the Ninth Circuit had remanded a habeas case to the district court for the development of facts regarding whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding.  233 F.3d at 1148.

Accordingly, Petitioner suggests that he is entitled to an evidentiary hearing to develop similar facts.

However, the mere fact that the prison law library is inadequate, standing alone, which is the only factual allegation Petitioner makes in this regard, does not serve to establish extraordinary circumstances necessary to invoke equitable tolling in this case. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Dickinson v. Masan*, No. 3:11-cv-700-MEF WO, 2014 WL 495363, *7 (M.D.Ala. Feb. 6, 2014). *See also Miller v. Florida*, 307 F. App'x 366, 368 (11th Cir. 2009) ("even restricted access to a law library, lock-downs, and solitary confinement do not qualify as [extra]ordinary circumstances warranting equitable tolling"); *Bell v. Secretary, Dept. of Corrections*, 248 F. App'x 101, 104–105 (11th Cir. 2007) (holding that inability to access prison law library was not extraordinary circumstance beyond prisoner's control that prevented him from timely filing his habeas petition despite his due diligence). Rather, a petitioner must show that the law library was inadequate and this inadequacy actually prevented him from timely filing his habeas petition. *See Spencer v. Magrady*, Civil Action No. 10-703, 2010 WL 5830500, *7 (E.D.Pa. Dec. 1, 2010) (holding that "a petitioner must show 'that the alleged shortcomings in the library or legal assistance program

16

actually hindered his efforts to pursue a legal claim'")
(quoting *Jones v. Armstrong*, 367 F. App'x 256, 258 (2d Cir.
2010)).

In this case, Petitioner alleges only a bald claim that the
prison law library was inadequate because it did not make AEDPA
available until May 2, 1997.  Petitioner does not show that the
prison law library lacked the adequate legal materials to inform
him about AEDPA before April 24, 1997; nor does Petitioner
demonstrate that this alleged inadequacy actually prevented him
from filing his petition on time.  Rather, he simply states that
he relied on the New Jersey state court five-year rule to file
his state PCR petition, and was unaware of AEDPA.  This is
merely a statement of ignorance of the law, which he remedied as
soon as he discovered it.  It is well established that ignorance
of the law, even for pro se prisoners, generally does not excuse
prompt filing.  *United States v. Johnson*, 544 U.S. 295, 311
(2005) (holding that "we have never accepted pro se
representation alone or procedural ignorance as an excuse for
prolonged inattention when a statute's clear policy calls for
promptness"); *see also Fisher v. Johnson*, 174 F.3d 710, 714 (5th
Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Williamson v.
Giroux*, Civil Action No. 12-1477, 2013 WL 4774468, *4 (E.D.Pa.
Sep. 6, 2013); *Walker v. Ricci*, 2013 WL 3223552, *11 (D.N.J.

Jun. 25, 2013).  Further, miscalculation of the limitations period or the time remaining on a limitations period does not constitute extraordinary circumstances to warrant equitable tolling.  *Walker*, *supra* (citing *Johnson v. Hendricks*, 314 F.3d 159, 161, 163 (3d Cir. 2002); *Fahey v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)).

Moreover, Petitioner does not show that he was diligent in pursuing his rights.  He waited almost two years before filing his first state PCR petition without any explanation other than his belief that he had five years from the date of his judgment of conviction to so file his first PCR petition.  Thus, this delay is insufficient to support the application of equitable tolling or statutory tolling under § 2244(d)(1)(B).

Petitioner also asserts that the accrual date for his one-year limitations period should be September 22, 1997, because that is when he discovered a constructive denial of effective appellate counsel.  Plaintiff alleges that appellate counsel had filed a copy of the brief for Petitioner's co-defendant on Petitioner's behalf.  Petitioner claims that this is an "interrupting event" that should establish a new date for equitable tolling.  (ECF No. 41 at 5.)

This Court likewise rejects this event as extending a new accrual date for limitations purposes.  Petitioner does not

explain how he did not know about this appellate brief before
September 22, 1997, which brief had been filed in February 1995,
and was ruled upon by the Appellate Division on May 25, 1995.
Clearly, "discovery" of his brief on appeal more than 2½ years
later undermines any claim of diligence on Petitioner's part and
defeats his argument for equitable estoppel.

Petitioner further argues that he is entitled to statutory
tolling of his one-year limitations period pursuant to 28 U.S.C.
§ 2244(d)(1)(D).  Namely, Petitioner contends that the start
date for his limitations period began on "the date on which the
factual predicate of the claim or claims presented could have
been discovered through the exercise of due diligence."  28
U.S.C. § 2244(d)(1)(D).  Petitioner alleges that his statute of
limitations began to run on September 10, 2001, when he received
an affidavit from Private Investigator Maria Polumbo regarding
newly discovered evidence of prosecutorial misconduct.
Polumbo's affidavit stated that Dugger was sentenced to time
served for his testimony against Petitioner at Petitioner's
trial.  Petitioner alleges that the prosecuting attorney told
Dugger that he would be given a lenient sentence if Dugger
testified that he conspired with Petitioner to murder the
victim, McDaniel.  (ECF No. 41 at 3.)

Petitioner also blames ineffective assistance of trial, appellate and PCR counsel for the late discovery date of this information, as well as information regarding Dugger's psychiatric and medication history that would have affected the credibility of Dugger's testimony at Petitioner's trial.  (*Id.* at 3-9.)  Petitioner contends that these deficiencies of his counsel warrant application of equitable tolling.

This Court finds no merit to Petitioner's claim that his limitations period should be governed by 28 U.S.C. § 2244(d)(1)(D).  Although "factual predicate" is not defined under AEDPA, the Third Circuit has held that "[§] 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known." *McAleese v. Brennan*, 483 F.3d 206, 213 (3d Cir. 2007)(quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004).  Therefore, under *Schlueter*, the "factual predicate" of a petitioner's claims constitutes the "vital facts" underlying those claims. *Id.*

Here, as this Court discussed in its January 24, 2013 Opinion (ECF No. 36), Petitioner's two habeas claims are based on information about the State's key witness, Samuel Dugger, that Petitioner allegedly did not have prior to Dugger's testimony at Petitioner's trial.  However, as properly found by

the state court when denying Petitioner's motion for a new trial based on this same information, at the time of trial, Petitioner's counsel was well aware of Dugger's history of psychiatric problems and drug use and in fact, cross-examined Dugger extensively about said problems. *State v. Wilson*, 2010 WL 4025639, *1 (N.J. Super. Ct. App. Div. August 19, 2010).

Further, at the time of trial, Petitioner and his trial counsel were aware of Dugger's plea agreement, and trial counsel cross-examined Dugger on this issue to impeach his credibility. Even if this Court were to assume that the length of time Dugger later received as a sentence (time served as opposed to the plea agreement of "no more than ten years") is a "vital fact," Petitioner could have discovered said fact through due diligence well before 2001, since Dugger was sentenced to time served and released from prison on October 1, 1993.

Thus, based on the foregoing, utilizing § 2244(d)(1)(D) does not provide Petitioner with a later accrual date than § 2244(d)(1)(A) since the factual predicate of the claims presented could have been discovered through the exercise of due diligence, at the latest, shortly after Petitioner's trial in 1993.

To overcome this obstacle, Petitioner now argues that the ineffective assistance he received from trial, appellate and PCR

counsel, constituted extraordinary circumstances warranting application of equitable tolling. Petitioner contends that there is "cause and prejudice to excuse any procedural default of Petitioner's claims" based on counsel blunders and ineffectiveness. (ECF No. 41 at 6.)

For instance, Petitioner again refers to his appellate counsel having filed the exact same brief on direct appeal as for co-defendant. As noted above, this fact could have been ascertained by Petitioner much earlier than the alleged September 22, 1997 discovery date asserted by Petitioner. Moreover, Petitioner does not articulate how the arguments advanced by appellate counsel, even if they were identical to claims asserted on behalf of co-defendant on appeal, were deficient. Indeed, at the first PCR hearing on October 18, 2000, the PCR court found that there was no evidence to show that the defenses of the co-defendants were inconsistent. (Ra34, Oct. 18, 2000 PCRT 57:5-7.) Finally, the Appellate Division found Petitioner's arguments concerning the ineffectiveness of his appellate counsel "unpersuasive," and held that there was no discernible error by appellate counsel that would warrant "a reversal of [Petitioner's] well-deserved convictions." (Ra11, May 30, 2002 App. Div. Op. at 8.)

Thus, appellate counsel's filing of a brief on behalf of Petitioner identical to a brief on behalf of a co-defendant, where the claims were consistent for both, having been tried jointly, does not amount to an extraordinary circumstance necessary to apply equitable tolling.  Even if this alleged deficiency of appellate counsel was extraordinary, Petitioner cannot show reasonable diligence required to warrant equitable tolling.  *See Brown v. Shannon*, 322 F3d at 773 (holding that even if extraordinary circumstances exist, equitable tolling is not available where petitioner has not exercised reasonable diligence in filing his petition).

Petitioner next argues that his trial counsel's failure to effectively investigate and pursue defenses based on Dugger's mental and drug abuse history and the extent of his plea agreement at the time of trial provides grounds for equitable tolling.  This argument is also unavailing.

First, this Court notes that the first PCR court found that trial counsel was competent and effective.  Guided by *Strickland v. Washington*, 466 U.S. 668 (1984), the PCR court rejected each argument advanced by Petitioner regarding counsel's alleged deficiencies.  For instance, the court found the lack of an expert witness on intoxication was a strategic decision by counsel and that such a witness would not have changed the

23

outcome of trial given testimony that Dugger and Petitioner, as well as the other co-defendants had consumed 17 vials of cocaine in three or four hours.  (Ra34, Oct. 18, 2000 PCR Hearing Transcript at 37:4-40:8.)

The PCR court also rejected Petitioner's argument that trial counsel was ineffective in failing to call two witnesses to testify about a robbery motive.  The court found that counsel made a strategic decision to disregard the robbery motive so as to get three charges dismissed (robbery, conspiracy to commit robbery, and felony murder), and also because a robbery motive is much easier for a jury to understand than the more subjective motive to murder a homosexual.  (*Id.*, 40:9-47:23.)  In affirming the PCR court, the Appellate Division stated: "Even viewing the record indulgently, there is nothing before us, except bare allegations, supporting current counsel's claim of professional errors."  (Ra11, May 30, 2002 App. Div. Op. at 7.)

Further, in Petitioner's later motion for a new trial, filed in May 2003, which raised similar claims asserted in this habeas petition, the state court rejected Petitioner's claim that the prosecutor and Dugger had a secret or hidden agreement to have Dugger testify against Petitioner in exchange for a more lenient sentence than that made known at trial.  The state court found this contention to be "pure speculation."  (Ra15, Mar. 3,

2008 Law Div. Op. at 7.)  Moreover, the court found that even if
Petitioner could show something more solid concerning a hidden
plea deal, it would not have changed the outcome of trial as
trial counsel had emphasized Dugger's plea deal of a ten year
prison term rather than life imprisonment during cross-
examination to discredit Dugger's testimony against Petitioner.
(*Id.* at 8.)

The trial court also rejected Petitioner's contention that
he was entitled to a new trial based on newly discovered
evidence concerning Dugger's drug use and mental history.
Specifically, the court ruled:

> Here, defendant and his counsel were well aware of Mr.
> Dugger's history of psychiatric problems during the trial.
> In fact, defendant's attorney, who was in possession of Mr.
> Dugger's medical record, spent a significant amount of time
> cross-examining the witness regarding his hospitalization,
> his suicidal thoughts and his use of illegal drugs. ...
> Furthermore, if in fact defendant was taking such
> medication, it cannot be said this information was not
> "discoverable" at the time, especially since defendant and
> his counsel were in possession of Mr. Dugger's medical
> history.

(*Id.* at 9-10.)

The court also noted that even if this amounted to new
evidence, it would not have changed the outcome of trial.  The
jury "was well aware of the issues concerning Mr. Dugger's
credibility including his mental health and his history of heavy

drug use.  At best, such evidence would be 'merely' cumulative or impeaching."  (*Id*. at 10.)

Indeed, on appeal from denial of his motion for a new trial, the Appellate Division again noted that trial counsel had a copy of Dugger's medical records at the time of trial.  These records reflected an admitting diagnosis of "major depression w[ith] substance abuse disorder w[ith] suicidal ideation." (Ra19, Aug. 19, 2010 App. Div. Op. at 5.)  The records also showed that Dugger had been administered "Triavil" as part of his treatment of his depression.  (*Id*. at 6.)  The Appellate Division further observed that, at Petitioner's trial, Dugger had been "cross-examined at length about his drug use, specifically his drug use on the day of the murder," which included testimony that about 20 vials of cocaine were smoked by Dugger and the co-defendants in the two hours before the murder. Dugger even admitted that he "got pretty high" that day.  (*Id*. at 7.)  Thus, even if the court were to construe Petitioner's evidence of Dugger's habitual daily drug use as "newly discovered evidence," the prior hospital records and trial testimony of Dugger rendered this "new" evidence merely cumulative and not likely to result in a different verdict. (*Id*. at 7-8.)

The Appellate Division further dismissed Petitioner's argument about prosecutorial misconduct concerning Dugger's plea agreement.  The court noted that the plea "agreement restricted the prosecutor's right to seek a sentence that exceeded ten years; it did not deprive the prosecutor of the option to recommend a more lenient sentence in the event that Dugger's cooperation merited it." (*Id.* at 9.)  Moreover, the Appellate Division found that even if Dugger's sentence to time served "could be construed as newly discovered evidence, knowledge of that sentence was available in 1993, before defendant filed his first petition for post-conviction relief," and therefore, any claim based on that evidence was time-barred.  (*Id.*)

Therefore, because all of the information Petitioner claims to be newly discovered as of September 2001, were known or easily discoverable to Petitioner before he filed his first state PCR petition, he cannot rely on these arguments of ineffective assistance of counsel to support equitable tolling.

Finally, Petitioner contends that his state PCR counsel was ineffective, resulting in the late discovery of the information brought to his attention by Investigator Polumbo in September 2001, after he already had filed his first state PCR petition on May 21, 1997.  Petitioner claims that this ineffectiveness constitutes extraordinary circumstances to permit equitable

tolling.  However, Petitioner's extensive letters of
dissatisfaction with his PCR counsel spanning many months from
early 2003 through early 2006, occurred well after the statute
of limitations had expired on April 24, 1997, and almost two
years after Petitioner "newly" discovered the evidence of
Dugger's sentence to time served and daily habitual drug use.
Consequently, any ineffectiveness of PCR counsel does not serve
to equitably toll the limitations period.

Moreover, Petitioner's claim that his PCR counsel rendered
ineffective assistance of counsel does not provide a basis for
equitable tolling of the AEDPA one-year limitations period.  *See
e.g., Dixon v. Bartkowski*, Civil Action No. 11-3213 (DMC), 2013
WL 5730152, *8 (Oct. 21, 2013); *Pitts v. Kerestes*, No. 12-2661,
2013 WL 4718950, *4 (E.D.Pa. Sept.3, 2013) ("By its own terms,
the narrow rule of *Martinez*[5] applies only to excuse procedural
default.  It makes no mention of providing a basis for equitable
tolling.") (internal citation omitted) *Garcia v. Warren*, Civ.
No. 12-7680(JAP), 2013 WL 3221306, *4 (D.N.J. Jun.25, 2013)
(finding that general allegations of ineffective assistance of
PCR counsel, along with a reliance on *Martinez*, did not show

---

[5] *Martinez v. Ryan*, --- U.S. ----, 132 S.Ct. 1309, 182 L.Ed.2d
272 (2012).  In *Martinez*, the Supreme Court held that inadequate
assistance of counsel at initial state PCR proceedings may
establish cause for a prisoner's procedural default of a claim
of ineffective assistance at trial.  132 S.Ct. at 1317-18.

extraordinary circumstance prevented petitioner from timely filing his federal habeas petition); *Silfies v. Walsh*, No. 02-1777, 2013 WL 3049096, at *3 (M.D.Pa. June 17, 2013) (holding that "*Martinez* did not provide that postconviction counsel's ineffectiveness could establish an exception to or equitable tolling of AEDPA's one-year statute of limitations for filing a federal habeas corpus petition.") (citations omitted); *Saunders v. Lamas*, No. 12-1123, 2013 WL 943351, at *6 (E.D.Pa.Feb.13, 2013) (noting that "[t]he Supreme Court does not state in *Martinez* that a blanket allegation of ineffectiveness of PCRA counsel can constitute a basis for equitable tolling of the habeas statute of limitations.  The *Martinez* decision did not allow for equitable tolling of the AEDPA deadlines.") (citations omitted), *report and recommendation adopted by*, 2013 WL 943356 (E.D.Pa. Mar.11, 2013); *Terry v. Cathel*, No. 12-5263, 2012 WL 4504590, at *4 (D.N.J.Sept.27, 2012) ("No aspect of the *Martinez* decision implicated, addressed or even reflected on the issue of untimeliness of the litigant's federal habeas petition."); *see also Scaife v. Falk*, No. 12-2530, 2013 WL 1444236, at *5 (D.Colo. Apr.9, 2013) ("[A]lthough Martinez might be relevant if Mr. Scaife were seeking to overcome a procedural default in the context of exhaustion of state court remedies, nothing in *Martinez* demonstrates the existence of any extraordinary

29

circumstances to justify equitable tolling of the one-year limitation period.").

Thus, while Petitioner generally argues that there is cause and prejudice to excuse procedural default of his claims, (*see* ECF No. 41 at 6-9), this Court did not find that Petitioner's claims were procedurally defaulted.  Rather, this Court determined that the federal habeas petition was time-barred under the applicable AEDPA statute of limitations. Consequently, any allegations by Petitioner that his PCR counsel's ineffectiveness constitutes extraordinary circumstances to warrant equitable tolling lacks merit and will be denied accordingly.  *See Clark v. Ricci*, Civ. No. 08-3347 (RBK), 2013 WL 5817655, *4 (D.N.J. Oct. 29, 2013).

Therefore, because this Court finds that neither statutory tolling nor equitable tolling applies in this case, the habeas petition filed by Petitioner on March 10, 2011, more than thirteen years after the April 24, 1997 expiration of Petitioner's one-year limitations period, is time-barred and the petition will be dismissed with prejudice.

Finally, because this Court finds that the petition is time-barred, Petitioner's motion for an evidentiary hearing (ECF No. 42) and his motion for leave to file a reply to Respondents'

opposition (ECF No. 50) are rendered moot and are denied accordingly.

## IV.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  *See* Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id*.  For the reasons discussed above, this § 2254 habeas petition is time-barred.  The Court also is persuaded that reasonable jurists would not debate the correctness of this conclusion. Consequently, a certificate of appealability will not be issued.

V.  <u>CONCLUSION</u>

For the above reasons, this Court finds that the § 2254 habeas petition must be dismissed as time-barred, and that a certificate of appealability will not issue.  An appropriate Order follows.


                              s/ SUSAN D. WIGENTON
                              United State District Judge